**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 18a0196n.06

Case No. 17-5901

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| WILLIAM KENNEDY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| LIFE INSURANCE COMPANY OF NORTH | ) | KENTUCKY |
| AMERICA, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

**FILED**

Apr 13, 2018
DEBORAH S. HUNT, Clerk

BEFORE: MOORE, THAPAR, and BUSH, Circuit Judges.

THAPAR, Circuit Judge. William Kennedy seeks long-term disability benefits from Life Insurance Company of North America (LINA), his former employer's benefits-plan administrator. But he did not ask LINA for long-term benefits in a manner consistent with its policies. So the district court correctly denied him relief.

Kennedy suffers from peripheral neuropathy and lung problems. Based on these conditions, he applied for short-term disability benefits. But LINA was unable to obtain records adequately documenting his conditions from his primary-care physician. Accordingly, LINA denied his claim. LINA's denial letter told Kennedy that he could appeal within 180 days. On the 180th day, LINA received an illegible letter. Unable to decipher it, LINA attempted to contact the sender—evidently "Jennifer," which LINA's records describe as a "daughter,"

presumably Kennedy's—but no one answered. LINA left a message requesting a call back. It does not appear from the record that anyone returned the call.

Over two years later, LINA received two letters from Kennedy's attorney. The letters sought a decision on Kennedy's claim for long-term benefits. LINA was no doubt surprised—Kennedy had never applied for long-term benefits, and his application for short-term benefits had failed years ago—but it reviewed its records anyway. This revealed that Kennedy no longer worked for his employer and was therefore ineligible for benefits. LINA therefore closed the matter without replying to the attorney's letters.

Kennedy then sued, claiming that LINA had violated his employer's disability plan, and thus the Employee Retirement Income Security Act, by failing to grant him long-term benefits. *See* 29 U.S.C. § 1132(a)(1)(B). The district court granted LINA summary judgment, holding that Kennedy failed to exhaust his administrative remedies. We review the district court's exhaustion ruling for abuse of discretion. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998).

The district court was right: Kennedy never applied for long-term benefits. The first time he even mentioned long-term benefits was in his attorney's letters—both of which came long after any such claim was due under the plan's terms. Kennedy therefore failed to exhaust LINA's administrative process. *Garst v. Wal-Mart Stores, Inc.*, 30 F. App'x 585, 593 (6th Cir. 2002) (observing that exhaustion requires "compl[iance] with a reasonable time constraint imposed by the plan for administrative review of denial of [a] claim").

Kennedy nevertheless contends that LINA should have automatically treated his application for short-term benefits as one for long-term benefits too. He points to an internal policy under which LINA transitions claims for short-term benefits into claims for long-term

benefits when short-term benefits "are expected to reach maximum duration" under the plan's terms. R. 18-1, Pg. ID 831. But LINA did not expect that Kennedy's short-term benefits would reach maximum duration, since it did not grant him short-term benefits in the first place. So the internal policy is inapplicable. Kennedy nonetheless insists that LINA *should have* expected his short-term benefits to reach maximum duration. But Kennedy did not challenge LINA's denial of short-term benefits in this litigation, and in any event it is not at all clear why LINA should have reasonably expected Kennedy's short-term benefits to reach maximum duration when it had not received sufficient documentation to grant any such benefits at all.

Kennedy further argues that LINA's denial of short-term benefits should not have prevented transition because LINA should have applied an exception under the internal policy. The exception applies when LINA denies short-term benefits because of an "exclusion"—such as worker's compensation—in which case long-term benefits might still be available. *Id.*, Pg. ID 832. In the next paragraph, the policy explains that, even though LINA denies short-term benefits, "the claimant may still be eligible for [long-term] benefits," and instructs that "[t]he claim should still be investigated for [long-term] benefits in a timely manner." *Id.* In context, this exception makes sense. Many disability plans prevent double recovery for the same disability under both the plan and worker's compensation. *See, e.g.*, *Ciaramitaro v. Unum Life Ins. Co. of Am.*, 521 F. App'x 430, 435 (6th Cir. 2013). But worker's compensation payments may run out, in which case LINA will still consider an applicant's eligibility for long-term benefits despite having denied short-term benefits under the exclusion.

Kennedy attempts to swallow the rule with the exception, arguing that *any time* LINA denies an application for short-term benefits it must transition the claim to one for long-term benefits. But his reading fails to account for the remainder of the text of LINA's policy, which

limits the exception to exclusions and requires transition otherwise only where LINA expects short-term benefits to "reach maximum duration." R. 18-1, Pg. ID 831–32. Not only that, but under Kennedy's position, LINA would also have to transition *every* unsuccessful claim for short-term benefits—even when, for example, the applicant is perfectly healthy. That cannot be what the text of LINA's internal policy envisions. Since LINA did not deny Kennedy benefits because of an exclusion, the internal policy is inapplicable. Kennedy's argument on this front therefore fails.[1]

Finally, Kennedy asserts that LINA did in fact transition his short-term claim to a long-term one, notwithstanding the inapplicability of its internal policy. He points to one cryptic line in the nearly 700-page administrative record, which reads, "Ltd 11/15/2012 Open." Kennedy takes this line to mean that LINA opened an application for long-term disability benefits on Kennedy's behalf on that date, even though Kennedy never asked for LINA to do so, and even though LINA denied him short-term benefits. But Kennedy fails to identify any support for this interpretation in the record. Notably, he points to nothing documenting the various actions that LINA's policy would require LINA to take if it had transitioned his nonexistent short-term benefits, nor a decision on the purportedly transitioned claim. This absence is all the more telling given that the record *does* contain email confirmation following LINA's receipt of the letters that Kennedy's attorney later sent asking about Kennedy's long-term benefits. One would expect some type of similar confirmation in the record if LINA had in fact transitioned a long-

---

[1] Kennedy also claims that LINA breached its fiduciary duty under ERISA by failing to advise him of this portion of its internal policy. *See* 29 U.S.C. § 1132(a)(3). But LINA was under no obligation to apprise him of an inapplicable, and therefore immaterial, internal policy. *Cf. Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999) ("[A] fiduciary breaches its duties by *materially misleading* plan participants . . . ." (emphasis added)). To the extent he argues that this portion of the policy establishes a broader right to apply for long-term benefits despite the short-term benefit denial, and that LINA failed to inform him of this right, that portion is exclusion-specific and does not establish the right he claims. And Kennedy identifies nothing else in support of any such argument.

term benefit claim on Kennedy's behalf on November 15, 2012. But the record contains no such confirmation. And so in light of the record as a whole, this one line does not demonstrate that LINA transitioned his short-term claim. Thus, the district court did not abuse its discretion in holding that Kennedy failed to exhaust his administrative remedies.[2]

    The district court's decision is **AFFIRMED**.

---

[2] Kennedy also contends that the district court erred by considering a declaration outside the administrative record in ruling for LINA. Since the district court's decision was correct irrespective of the declaration, we need not reach this issue.